UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                       Chapter 7
Nicholas A. Weber,                                              Case No. 13-21290-svk
           Debtor.

**DECISION AND ORDER ON DEBTOR'S MOTION FOR CONTEMPT**

Nicholas A. Weber (the "Debtor") filed a motion to hold Don B. Wang, Ellen R. Bahe (the "Creditors") and their attorney Bradley Dagen in contempt of court for willful violation of the discharge injunction. The Debtor alleges that the Creditors refused to dismiss a state court action against the Debtor despite repeated requests by the Debtor's attorney. The state court action involved the Debtor's failed business, Bella Kitchen & Bath, LLC ("Bella"), which was co-owned by the Debtor and Nicki L. Losinski ("Losinski").

The state court action began on October 1, 2012, when the Creditors sued Bella, Losinski and the Debtor in the Circuit Court for Waukesha County (the "Circuit Court"). The Debtor filed an answer and cross-claim. On November 15, 2012, Losinski filed a Chapter 7 petition (Case No. 12-36418), and a number of individuals, including the Creditors, filed nondischargeability complaints against her, seeking to except their debts from the bankruptcy discharge.

On February 5, 2013, the Debtor filed his own Chapter 7 petition in this Court. (Docket No. 1.) The deadline to object to dischargeability of the Debtor's debts was May 7, 2013. (Docket No. 3.) Several creditors filed adversary proceedings against the Debtor objecting to the dischargeability of their debts. (Docket No. 34, 37, 38, 39, 41.) The Creditors did not file a nondischargeability complaint against the Debtor. On September 12, 2013, the Court entered an order granting the Debtor's discharge. (Docket No. 52.)

According to the docket in the state court action, at a scheduling conference on March 1, 2013, the Creditors' attorney, Lora Lococo, made statements as to "Plaintiff's [sic] position on many of the defendant's [sic] pending bankruptcy actions." (Docket No. 57-3.) It is unclear whether Attorney Lococo was referring to the Debtor or Losinski or both. Another status conference was held on April 29, 2013, and the record states: "Court signed order [for default judgment] against Bella Kitchen & Bath, LLC ONLY. Court will schedule the matter for a status conference to address the Status of Bankruptcy." (*Id.*)

The next status conference was September 13, 2013 (the day after the Debtor's discharge was granted), and the docket indicates that "Attorney Lococo gives an update regarding the bankruptcy and there are still matters being addressed and depositions and wishes to reserve the civil claim in this matter." (*Id.*) The court then adjourned the status conference to March 21, 2014. At that status conference, approximately six months after the Debtor's discharge, Attorney Thomas C. Simon represented the Debtor and indicated that "bankruptcy has continued and the file was turned over to the bankruptcy attorney." Attorney Lococo gave an update regarding Losinski's bankruptcy including that dates were set for the dischargeability trial in bankruptcy court. Regarding the Debtor, Attorney Lococo represented that, "bankruptcy has not gone to discharge at this time." The docket states: "Attorney Lococo is requesting an additional stay until bankruptcy issues are completed. Attorney Simon has no comment and will be filing an order to withdraw." (*Id.*)

The final status conference was held on October 6, 2014, and the docket indicates that "Attorney Dagen gives an update and indicates the bankruptcy is still pending and now the Attorney General's Office is involved. Court will consider dismissing the matter and can be reopened." (*Id.*) In fact, by October 6, 2014, all matters within the Debtor's bankruptcy case

had been completed, and all the discharge adversary proceedings had been closed. Attorney Dagen finally submitted an order dismissing the state court action against the Debtor, which the Circuit Court entered on November 17, 2014. (Docket No. 61.)

Between May 2014 and October 2014, the Debtor's bankruptcy attorney, Rollie Hanson, emailed Attorney Dagen several times requesting dismissal of the state court action against the Debtor. (Docket No. 57-4.) Attorney Dagen resisted, claiming that the state court action was "stayed as to Mr. Weber." His October 24, 2014 email stated that "we disagree as to whether my office is prosecuting any collection activity against your client." (*Id.*) While he agreed that the Creditors' debt is discharged, Attorney Dagen insisted that "there are other potential proceedings that may occur relative to this matter." He closed with the reminder that "Mr. Weber was an active participant in the management of a business operation that is clearly guilty of theft by contractor activities." (*Id.*) On October 28, 2014, Attorney Dagen forwarded a proposed Stipulation to Dismiss the state court action. His email states: "Please be advised that we disagree with your analysis/conclusions as to our efforts in this matter. However and nonetheless, our client has elected to dismiss Mr. Weber for reasons of cost-effectiveness."

Attorney Hanson replied to the proposed Stipulation requesting that the dismissal be "with prejudice." Attorney Dagen refused to make this change, requesting authority for the requirement. (*Id.*) Attorney Hanson did not provide authority, but instead filed the instant motion to have Attorney Dagen and the Creditors held in contempt. The same day the motion was filed, the Circuit Court entered an order dismissing the state court action against the Debtor "without prejudice." (Docket No. 61.)

At the preliminary hearing on the motion for contempt, Attorney Dagen defended his actions in refusing to dismiss the state court action with prejudice by explaining that doing so

3

would harm his clients' rights to obtain restitution in the pending Attorney General's investigation. He stated that a dismissal with prejudice would be treated as a settlement and in that event, the "D.A. won't help us." When the Court expressed skepticism about the dismissal with prejudice of a civil suit against a discharged debtor affecting a creditor's right to criminal restitution, Attorney Dagen insisted it happened "all the time." Attorney Hanson subsequently filed an email from then-District Attorney Brad Schimel stating: "Thus, unless the creditor entered into some agreement that they would not seek restitution in the criminal case, if they are a victim as defined by the restitution statute, then they could seek restitution in a criminal prosecution." (Docket No. 64-1.)

The issue is whether Attorney Dagen's refusal to dismiss the civil action violated the discharge injunction. This court previously explained the initial considerations involved in the analysis: "The discharge injunction is created by 11 U.S.C. § 524(a) (the "Bankruptcy Code" or the "Code"), which states in relevant part:

> A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

The Debtors bear the burden of proof on this Motion, and must prove the violation of the discharge injunction by clear and convincing evidence. *In re Pincombe*, 256 B.R. 774 (Bankr. N.D. Ill. 2000)." *In re Weinhold*, 393 B.R. 623, 628 (Bankr. E.D. Wis. 2008). In *Pincombe*, the court noted that the same test used to determine a willful violation of the automatic stay under 11 U.S.C. § 362 applies to the determination of a willful violation of the post-discharge injunction under § 524. *Pincombe*, 256 B.R. at 783. Under the test, the creditor may be held in contempt if it (1) had knowledge of the post-discharge injunction; and (2) intended the actions which violated the injunction. *Weinhold*, 393 B.R. at 629.

4

Here, the discharge was entered on September 12, 2013, and the Court's certificate of service shows that both Attorney Dagen and the Creditors received a copy of the discharge order. (Docket No. 53.) Accordingly, they knew of the discharge injunction when they advised the Circuit Court that the bankruptcy was "still pending" and "had not gone to discharge." Apparently, Attorney Dagen was "investigating options that would respect . . . the Bankruptcy Stay and Discharge Orders (in the Weber case)." (Docket No. 58 at ¶ 18.) These options apparently included providing information to the Circuit Court that "the Attorney General is now investigating [the Debtor] for potential criminal prosecution." (*Id.*, Docket No. 57-3.) This information then became part of the Circuit Court's record of the case, available to anyone with an internet connection and access to CCAP.

The Creditors maintain that they did not take any action to collect their debt or continue the prosecution of their lawsuit; they merely responded to the Circuit Court's notices of status conferences. They fail to explain why, once the discharge was entered, they did not advise the Circuit Court that the state court action should be dismissed as to the Debtor. <u>His discharge provided a complete defense to the state court civil action</u>. Of course, the discharge would not cover a restitution obligation in a criminal proceeding, but the pending civil action was a completely separate civil proceeding, and the Creditors have cited no authority that maintaining it had any effect on any criminal prosecution.

In response to the Creditors' claim that they were merely maintaining the status quo, first, there was no reason to maintain the status quo after the discharge was entered. Unlike the stay, the discharge is a permanent injunction against the collection of this discharged debt. Second, even before the discharge was entered, courts have held that merely "maintaining" a collection

5

action can violate the stay. In *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002), the Ninth Circuit Court of Appeals explained:

> The [automatic stay of the] continuation against judicial actions includes the maintenance of collection actions filed in state court. It contradicts the plain meaning of the statute to suggest that the § 362(a)(1) stay against the continuation of judicial actions does not prohibit the maintenance of an active collection action <u>or the unjustified delay in the dismissal of such</u>. . . . Maintenance of an active collection action in state court does nothing if not carry forward or persist against a debtor. A debtor enjoys little satisfaction from a creditor's honest words that it files a collection action in state court but refrains from persisting in the collection action until bankruptcy proceedings sort itself out. Active state filings exist as more than placeholders -- the risk of default judgment looms over the debtor throughout. Counsel must be engaged to defend against a default judgment. Additionally, state collection actions are not to be used as leverage in negotiating collection over the debtor's estate already in bankruptcy.

(emphasis supplied).

In this case, the Creditors and their attorney unjustifiably delayed in dismissing the state court action against the Debtor. Once the deadline for filing dischargeability complaints expired, and the Creditors determined not to file such a complaint, the case should have been dismissed. But over one year passed before the Creditors took this simple action. Contrary to Attorney Dagen's email, upon entry of the Debtor's discharge, there were no "other options" to be explored. Requiring the Debtor's attorney to appear and provide status updates to the Circuit Court violated the discharge injunction. Attorney Dagen deflected this criticism at the hearing, stating that he was simply responding to the Circuit Court's notice of status conferences. But the Circuit Court would not have needed status updates if the Creditors honored the discharge injunction and dismissed the case. Reporting to the Circuit Court about the criminal investigation served no purpose other than to embarrass the Debtor and possibly obtain leverage against him.

6

On the other hand, Thomas Simon, the Debtor's own attorney, who also received a copy of the Debtor's discharge order in September 2013, reported to the Circuit Court in March 2014 that the bankruptcy was ongoing. (Docket No. 53.) When the Creditors' attorney misinformed the Circuit Court that the Debtor's discharge had not yet been entered, Attorney Simon did not correct her. Once the discharge was entered, the Debtor could have filed his own motion to dismiss the state court action. When faced with violations of the discharge injunction, debtors have at least three options:

> A debtor who believes a creditor is collecting a discharged debt may take any or all of the following actions: (1) assert the bankruptcy discharge as an affirmative defense in the state court action and allow the state court to determine the issue of dischargeability under § 523(a)(3); (2) remove the dischargeability defense or the entire state court action to the bankruptcy court; and (3) move to reopen the bankruptcy case to determine dischargeability or to enforce the discharge injunction under § 524(a)(2). . . . willful violation of the discharge injunction constitutes civil contempt and may warrant sanctions.

*Daniel Goodman, LLC v. Montgomery (In re Montgomery)*, No. 12 C 9328, 2013 U.S. Dist. LEXIS 66231, at *9 (N.D. Ill. May 7, 2013) (citing *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001); *In re Kewanee Boiler Corp.*, 270 B.R. 912, 918 (Bankr. N.D. Ill. 2002)). If the Debtor brought his discharge to the Circuit Court judge's attention, and the Creditors responded by arguing that the state civil action should nonetheless be continued, the Debtor would have a much stronger case for a willful discharge violation.

And Attorney Hanson's insistence on a dismissal with prejudice is misplaced. When Attorney Dagen requested authority supporting this request, Attorney Hanson did not provide any, choosing instead to file a motion in this Court for contempt. The Court's research failed to unearth any case requiring dismissal of a pending case with prejudice as a response to a debtor's discharge. This makes sense because whether a dismissal is with or without prejudice does not matter in light of the Debtor's discharge. If a civil action is dismissed without prejudice due to a

7

bankruptcy discharge, and the creditor then refiles the action, the creditor has willfully violated the discharge injunction and is liable for contempt. An action that cannot be refiled without such strong consequences is the same as an action dismissed with prejudice.

Although the Creditors should not have "maintained" the state court action in violation of the stay, the Debtor should not have insisted on dismissal with prejudice as a condition of not moving for contempt. Even though the Creditors participated in the litigation after they abandoned their claim to challenge the Debtors' discharge, the Debtor failed to bring his discharge to the Circuit Court's attention, which could have ended this entire dispute. Moreover, the Debtor's only damages appear to be his attorneys' fees for writing the emails and drafting the motion for contempt. At least some of those fees could have been averted if the Debtor had accepted the Creditors' offer of a dismissal without prejudice.

The Creditors committed a technical discharge violation but the Debtor failed to mitigate his damages, and the Court concludes that the Creditors and their attorney should not be held in contempt for their actions in this case. In the future, however, both the Debtor's and Creditors' attorneys could avoid these disputes by promptly advising the state court of a bankruptcy discharge.

For these reasons, it is therefore ORDERED: the Debtor's motion for contempt is denied.

Dated: January 14, 2015

By the Court:

/s/ Susan Kelley
Susan V. Kelley
Chief U.S. Bankruptcy Judge